**Cataldo MARINARO et al., Appellants,**

**v.**

**Boone DESKINS et al., Appellees.**

Court of Appeals of Kentucky.

March 24, 1961.

---

E. N. Venters, Pikeville, for appellant.

Henry D. Stratton, Pikeville, for appellee.

PALMORE, Judge.

The appellant is one of several plaintiffs who, claiming to be the owners of various undivided interests in a 100-acre tract of land on Cumberland Mountain in Pike County, Kentucky, and to be in possession of the land, brought this action against the appellees for damages resulting from the cutting and removal of timber. On the basis of testimony heard in support of a

motion for temporary injunction, supplemented by depositions taken subsequently, the trial court sustained a motion by appellees for summary judgment dismissing the action. Appellees did not introduce any evidence.

The complaint as amended included a claim of title by adverse possession and was traversed, inter alia, by a general denial of each and every allegation. The judgment rests on the failure of the plaintiffs to produce any substantial evidence of title, either by adverse possession or otherwise.

The plaintiffs claimed their title through one Jasper Mullins, who died in 1924. Taken in its most favorable light, the evidence showed that Mullins bought the property from Dave Hall in 1912 and thereafter lived on it for perhaps 10 years. The deed from Hall was not introduced in evidence. Whether Mullins was in possession at the time of his death is not clear, but we assume that he was. During his occupancy Mullins invited one Bev Wallace to move onto the place and stay there as long as he lived. After the death of Mullins none of his heirs (according to Wallace's testimony) ever asked Wallace to leave, and he still lives there. However, instead of claiming as a tenant of the Mullins heirs Wallace continued in possession under a claim of title in himself, and during the course of his testimony admitted that at one stage he caused to be prepared and recorded a forged deed purporting to convey to him a 375-acre tract embracing the acreage involved in this suit. (See French v. Elkhorn City Land Co., 293 Ky. 250, 168 S.W.2d 746, wherein Wallace's claim of title was defeated.) Wallace was a key witness by whom the plaintiffs sought, but failed, to prove that his possession of the property was for their benefit.

There was no evidence that any of the heirs of Jasper Mullins ever themselves assumed actual possession or continuous physical dominion over the property in question or that any of them or their purported successors in interest were in possession at the time this action commenced. One of the children of Jasper Mullins testified that he was guardian for some of the other children after the death of their father and that he "used to visit" the place "pretty often" and at one time "noticed Bev Wallace off of it," but had last been there some 6, 8, or 10 years ago. The strongest portion of his testimony was as follows:

"Q. 38. How long did you have control of this land? A. Well, up until not very long ago I told Kelly [the appellant, Marinaro] to go up there and look after it.

"Q. 39. How long ago? A. About a year ago.

"Q. 40. You had it from the time Jasper Mullins died, a year or two— A. How?

"Q. 41. You had it from the time Jasper Mullins died until a year or two before,—year or two ago? A. Well, a year after Jasper Mullins died.

"Q. 42. You had possession of it after Jasper Mullins died? A. I was supposed to.

"Q. 43. Well, did you have it in charge? A. Yes sir.

"Q. 44. About a year or two after Jasper Mullins died until about a year ago? A. Yes sir."

We consider this testimony far short of substantial evidence that the Mullins heirs actually and continuously possessed the land for any period of time after his death. Patently, then, since they cannot claim the benefit of Wallace's possession, which was hostile to them, their claim by adverse possession is limited to the period of occupancy by Mullins and fails for lack of 15 years' continuity. The case is distinguishable from Howard v. Mitchell, 1936, 268 Ky. 429, 105 S.W.2d 128, where the heirs of the first possessor acquired title on the theory that the succeeding possession of his widow, tacked to the first possession, inured to their benefit.

Though it was unnecessary to the conclusion reached in the Howard case, the opinion recites that possession under claim of right raises a rebuttable presumption of ownership, and that possession is prima facie evidence of title. Hence the appellant in this case argues that proof of Jasper Mullins's possession raises a rebuttable presumption of ownership at the time, which ownership would now be vested in his heirs and their successors.

■ For most practical purposes possession *is* ownership as against all but the legal titleholder. The principle was thus stated by Holmes: "The consequences attached to possession are substantially those attached to ownership, subject to the question of the continuance of possessory rights which I have touched upon above. Even a wrongful possessor of a chattel may have full damages for its conversion by a stranger to the title, or a return of the specific thing. * * * With regard to the legal consequences of possession, it only remains to mention that the rules which have been laid down with regard to chattels also prevail with regard to land. For although the plaintiff in ejectment must recover on the strength of his own title as against a defendant in possession, it is now settled that prior possession is enough if the defendant stands on his possession alone. Possession is of course sufficient for trespass." Holmes, The Common Law, pp. 241, 242, 244.

■ "Having possession, one may retain it against every one except the person who has legal title." Payne v. Edwards, 1920, 188 Ky. 302, 221 S.W. 1073. "Possession in the plaintiff with or without color of title is sufficient to maintain an action for trespass against one who has no title." Humphrey v. Mansbach, 1933, 251 Ky. 66, 64 S.W.2d 454, 456. Prior possession being prima facie evidence of title, it will support an action of trespass against one who enters without color of title and ousts the possessor. Burks v. Cox, 1912, 150 Ky. 511, 150 S.W. 662, 663.

■ The presumption heretofore mentioned is a rule of evidence in recognition of *actual* possessory rights which amount to ownership as against a stranger. But these possessory rights (and therefore the presumption) cease upon discontinuance of the possession. They may be enforced against an interloper who disseises the possessor only on the theory that the cause of action arose at the moment of the ouster and is directed to the rights of the respective parties as they existed at that time. Under this principle perhaps the Mullins heirs could have ejected Wallace upon a timely discovery that he was not holding as their tenant, but was asserting a nascent right in himself. However, since possessory title continues only as long as possession is held, after it has ended there can be no recovery from one who subsequently takes possession (or otherwise invades the premises). See III American Law of Real Property 806 (§ 15.9, Continuity of Adverse Possession; Interruptions). Therefore, the possessory title of Jasper Mullins existing during his occupancy of the premises cannot be raised in favor of his heirs after an interruption of nearly 30 years out of possession.

■ In order to support an action of trespass it is necessary that the plaintiff prove (a) title of record from the Commonwealth or from a source shown to be common with that claimed by the defendant, (b) title by adverse possession for the statutory period of 15 years, or (c) actual possession at the time of the invasion of his rights. Cf. Scroggins v. Nave, 1909, 133 Ky. 793, 119 S.W. 158, 159. The evidence in this case was not enough to show any of these alternatives.

The view we take of this case makes it unnecessary to consider whether, in the absence of the alleged deed from Dave Hall to Jasper Mullins, the evidence was sufficient to show possession by Mullins coextensive with the boundary described in the complaint.

Since the plaintiffs were offered the opportunity to adduce further proof but elected to rely on the evidence as it stood (and, in fact, moved for a judgment thereon), it is of little significance that appellees' motion was for a "summary" judgment. Under the present rules of practice (CR 41.02) it could have been treated simply as a motion for dismissal which, if sustained, technically would have required findings of fact. However, by an agreed order entered on July 8, 1953, it had been determined that the action would be practiced under the Civil Code, and if the judgment be considered as entered pursuant to a final hearing on the merits the result is the same.

Judgment affirmed.