**Chic GOSS, President & Process Agent of Chic Goss, Inc., et al., Appellants,**

v.

**Rose Burke BISSET, Appellee.**

Court of Appeals of Kentucky.

Jan. 27, 1967.

Raymond Francis Connell, Paris, for appellants.

John L. Keller, Harrodsburg, James F. Clay, Danville, for appellee.

PALMORE, Judge.

The questions involved in this case are whether certain items of property are "fixtures" within the meaning of that term as used in a lease or leases and, if not, who is entitled to them.

The proceeding began as a claim and delivery action by the appellee, Rose Burke Bisset, against "Chic Goss, President and Process Agent of Chic Goss, Incorporated," in which Mrs. Bisset sought possession of several items of property allegedly owned by her and wrongfully detained by the defendant. It was not clear from the complaint whether she was endeavoring to sue Goss the individual, the corporation, or both. Anyway, Goss personally answered that the property described in the complaint and order of delivery belonged to the cor-

poration and counterclaimed for the value of a window fan allegedly owned by him and wrongfully taken by Mrs. Bisset. In due course Chic Goss, Inc., was permitted to file an intervening complaint against Mrs. Bisset asserting ownership of all the property enumerated in her complaint, together with several additional items, alleging that Mrs. Bisset was wrongfully detaining all of it, and demanding damages. Mrs. Bisset denied the allegations of the counterclaim and, by answer to the corporation's intervening complaint, set forth the provisions of a written lease between herself as landlord and the corporation as tenant, one of which was as follows:

"All improvements and fixtures made to and located in said building or upon the lots shall become the property of the lessors exclusively * * *" etc.

By virtue of this provision she alleged ownership of all the property claimed by the corporation.

After hearing the evidence without a jury the trial court made findings and conclusions to the effect (1) that neither Mrs. Bisset nor the corporation had proved ownership of any of the property except that which had passed to Mrs. Bisset by the terms of their lease (without specifying which of the items fell within this category), (2) that the window fan claimed by Goss belonged to Mrs. Bisset by virtue of the provision in the lease, and (3) that since neither party had established title to the remaining items they should remain in Mrs. Bisset's possession "for a reasonable length of time" subject to claim by the true owner or owners.

Goss and the corporation appeal, no technical question being raised with respect to the appeal of Goss.

The term of the lease ran from April 1, 1959, to March 31, 1961. The leased premises consisted of a commercial garage building (Bisset Building) at the northeast corner of Eighth and High Streets in Paris, Kentucky, and an unimproved lot on the other side of the Lovell Building, which adjoins the Bisset Building and also was rented by the Chic Goss, Inc., from another party or parties. During the term of the Bisset lease and thereafter until April or May of 1961 Chic Goss, Inc., occupied and used all three properties for the conduct of an automobile dealership and repair service. When it vacated the Bisset premises it continued in possession of the adjacent Lovell Building, and some of the items of property here in controversy, including an air compressor, were located in the Lovell Building at that time.

As best we are able to reconstruct the facts from the evidence, Mrs. Bisset had leased her property to a previous tenant, Briggs Motor Company, for an 8-year term beginning April 1, 1951. That lease contained the same provision for fixtures as did the subsequent lease to Chic Goss, Inc. Briggs evidently assigned the lease to another company, Delaney, Inc., in 1955 or 1956. Goss was or became a one-third owner of Delaney, Inc., and in 1958 bought out the other owners, became the principal stockholder, changed the name of the corporation to Chic Goss, Inc., and continued as tenant under the original lease from Mrs. Bisset to Briggs. In any event, Chic Goss, Inc., had succeeded to the position of its predecessor lessees at the time the new lease was made in 1959.

Except for the above mentioned air compressor and the window fan claimed by Goss individually, the property in dispute had been placed in the Bisset Building or on the Bisset lot by the predecessor tenants, and some of it had been thereafter removed by Goss to the Lovell Building. That Chic Goss, Inc., had actual physical possession of all of it prior to its appropriation by Mrs. Bisset is not disputed; the trial court did not make any finding to the contrary. Hence our review is not directed to any factual determinations made by the trial court, but to the correctness of legal conclusions drawn from established facts.

■ "The facts constituting possession generate rights as truly as do the facts which constitute ownership, although the rights of a mere possessor are less extensive than those of an owner." Holmes, The Common Law, p. 239. "Even a wrongful possessor of a chattel may have full damages for its conversion by a stranger to the title, or a return of the specific thing." Id., pp. 241–242. "The owner is allowed to exclude all, and is accountable to no one. The possessor is allowed to exclude all but one, and is accountable to no one but him." Id., p. 246. As it has been observed before, possession *is* title except against the true owner. Cf. Marinaro v. Deskins, Ky., 344 S.W.2d 817, 819 (1961).

■ Several of the disputed items fall within the classification of "trade fixtures," which would remain the property of the tenant unless the contract provides otherwise. See Bank of Shelbyville v. Hartford, 268 Ky. 135, 104 S.W.2d 217 (1937). There seems to be a diversity of opinion on the question of whether a stipulation that fixtures shall remain on the premises includes trade fixtures, but we are persuaded to the view that it does, upon the theory that otherwise such a provision would be superfluous and meaningless. Hence it is our opinion that those items that can be fairly identified as having become trade fixtures while on the premises of Mrs. Bisset belong to her, but that she had no right to interfere with Chic Goss, Inc.'s possession of other chattels, whether on or off her property, and has no right to retain anything now in her possession by virtue of such interference.

■ Mrs. Bisset contends that whatever chattels were on the premises when Chic Goss, Inc., or its predecessor Delaney, Inc., assumed possession as lessee remained in constructive possession of the lessor, either because she as owner of the premises had prior possession and the successor tenant became, permissively, her bailee or because the chattels had the status of "mislaid" property to which, as owner of the premises

on which they were found, she had a right of possession superior to that of the finder. Cf. 1 Am.Jur.2d 21, 25 (Abandoned, Lost, etc., Property, §§ 23, 30). The answer to the first of these theories is that Mrs. Bisset never had any possession, actual or constructive, of property not covered by the lease, and certainly the scope of that instrument did not embrace personal property other than fixtures. Possession passed directly and immediately from one tenant to the other, and none of them held any mere chattels by agreement with or permission of Mrs. Bisset; nor is there anything in the record to suggest that any of them intended or claimed to hold them in her behalf. There simply is no foundation on which constructive possession can be erected. The answer to the second theory is that obviously all of the property in question was left on the premises intentionally, and none of it mislaid.

■ "Mislaid property is property which the owner voluntarily and intentionally laid down in a place where he can again resort to it, and then forgets where he put it." 1 Am.Jur.2d 4 (Abandoned, Lost, etc., Property, § 2). Unless there is evidence to the contrary, we think it must be presumed that when the owner of a garage business has turned his lease over to another tenant whose purpose is to engage in the same type of business, and has left major items of equipment without returning for them within a reasonable time thereafter, his intention was either to abandon the property or pass title to the successor. Conceding the trial court's right, within its fact-finding prerogative, to disbelieve Goss' testimony that he or his corporation had purchased the disputed property, the only credible conclusion in the alternative is that the prior owner nevertheless intended to abandon it.

"Abandoned property is that to which the owner has voluntarily relinquished all right, title, claim and possession with the intention of terminating his ownership, but without vesting it in any other person and with the intention of not reclaiming future pos-

session or resuming its ownership, possession, or enjoyment * * * Property which is abandoned by the owner * * * becomes subject to appropriation by the first taker * * * or finder who reduces it to possession. Such person thereupon acquires an absolute property therein as against both the former owner and the person upon whose land it happens to have been left." 1 Am.Jur.2d 3–4, 18 (Abandoned, Lost, etc., Property, §§ 1, 18).

If the chattels were abandoned, Chic Goss, Inc., was the finder, and Mrs. Bisset's ownership of the premises on which they were found is immaterial. The case is clearly distinguishable from Silcott v. Louisville Trust Co., 205 Ky. 234, 265 S.W. 612, 43 A.L.R. 28 (1924), in which a bond was found on the floor of the safety vault department of a bank and the bank was held entitled to its custody as against the finder. Despite the general rule that the finder of lost property may keep possession against the owner of the premises on which it was discovered, the court was of the opinion that the bank's duty to its customers gave it a superior right. In this case there was no comparable duty, the premises were not under the lessor's control when possession passed from one tenant to the other, and there is no basis for an inference that the property was "lost" anyway.

Those items that can be fairly classified as "fixtures" within the meaning of the lease or leases belong to Mrs. Bisset. As against Mrs. Bisset the appellants are entitled to the chattels by virtue of prior possession. Hence the complaint by appellants that the trial court erred in overruling their motion to amend its findings and conclusions so as to distinguish between the fixtures and nonfixtures is well taken.

In our judgment, on the basis of the established facts and thus as a matter of law, the disputed items are properly classified as follows:

*Fixtures*
2 neon overhead fixtures
1 gas stove
1 neon hall fixture
1 gas heater
1 large overhead neon fixture
1 gas floor heater
1 door mechanism with electric switches
1 furnace (Bryant heater)
7 neon fixtures
1 Yale door hinge
Sign standards erected on posts set in the vacant lot

*Chattels*
Extension cords
2 spotlights
5 steel work benches
1 desk
1 air compressor and lines
1 Frigidaire water cooler
1 Homart window fan (property of Goss individually)

In so classifying those items that are designated as fixtures we are influenced by the fact that although they were affixed to the real estate for a trade purpose of the lessee, for the most part they would be necessary to the comfortable occupancy of the premises by any tenant. Though otherwise they might be removable by the lessee as trade fixtures, under the lease contract they belong to the landlord. That Chic Goss, Inc., had severed and removed some of them to the Lovell Building without Mrs. Bisset's consent did not affect her title. Cf. 22 Am.Jur. 726–727 (Fixtures, § 13).

The Bisset Building and vacant lot had been used together over a number of years by a succession of tenants engaged in the automobile business, and it is readily apparent that the property was adaptable and had been adapted to the purposes of that particular use. That being so, it is reasonable to assume the likelihood that future tenants would be in the same type of business and would need the vacant lot for dis-

playing used cars, from which it follows that the signs mounted on posts imbedded in concrete on the lot come within the same rationale by which we are persuaded that the other items designated as fixtures should be so classified.

■ About the air compressor there can be no question. It was taken by Mrs. Bisset from the Lovell Building, where it had been in possession of Chic Goss, Inc. Not one witness was able to say it had ever been on her property or in her possession. And in any case, its character was that of business equipment, not a fixture.

■ The window fan and water cooler were mere conveniences to the tenant and were easily removable. We regard them also as in the category of movable equipment rather than trade fixtures.

■ The remaining items designated above as chattels were not affixed to the real estate at all, either actually or constructively, and we cannot descry any basis whatever for treating them as fixtures.

Both the counterclaim of Goss and the intervening complaint of Chic Goss, Inc., against Mrs. Bisset sounded in trover rather than replevin. They did not seek a return of the property wrongfully taken from their possession, but its value instead. Each of them demanded punitive damages, and Chic Goss, Inc., demanded $7,000 damages for loss of profits occasioned by its being forced out of business (through loss of its equipment) which it was conducting on other premises.

Upon remand of the cause Goss and Chic Goss, Inc., shall be given judgment for the value of the property wrongfully taken from their possession and the trial court shall also determine what, if any, further damages they may recover under the pleadings and evidence in the case.

The judgment is affirmed in part and reversed in part with directions that a new judgment be entered in conformity with this opinion.

DISSENTING OPINION

OSBORNE, Judge.

In 1951, Rose Burke Bisset leased a garage building in Paris, Kentucky, to Briggs Motor Company for a period of eight years. Among other provisions, the lease provided, "all improvements and fixtures made to and located in said building or upon the lot shall become the property of the lessor exclusively." This lease was assigned to an organization known as Delaney, Inc., in 1955. The plaintiff, Goss, was a part-owner in Delaney. In 1958, Goss bought out the other owners and became the sole proprietor of the business. He continued as tenant under the lease, and, in 1959, a new lease was made incorporating the above provision. During the course of the lease, the following fixtures accrued in the building: two neon overhead fixtures, one gas stove, one neon hall fixture, one gas heater, one large overhead neon fixture, one gas floor heater, one door mechanism with electric switches, one furnace (Bryant heater) seven neon fixtures, one Yale door hinge, extension cords, two spotlights, five steel work benches, one desk, one air compressor and lines, one Frigidaire water cooler, and one Homart window fan (property of Goss individually).

Upon termination of the lease, Goss made claim to these items and Mrs. Bisset filed an action for claim and delivery. The most able trial Judge heard the matter without a jury, and found as follows:

"In the first place there is a question of punitive damages, but no evidence to support such damages. The proof is that the defendant's lease expired and that he refused to renew it for reasons of his own."

"Coming to the real question in the case, there is no substantial or satisfactory proof before the Court that the plaintiff owned any of the property purchased by other people except that property that passed to her by terms of the lease with Mr. Goss, in which it was

stipulated that all fixtures at the end of the lease would pass with the property. As to other items in question that do not classify as fixtures, there is no proof on the part of the plaintiff that they belong to her. Her former leases might have had the same stipulation in them, but the Goss lease specified that the fixtures purchased by others would be hers at the end of the lease, and, of course, the Court cannot adjudicate any potential claims of the people who bought the property in this suit between Mrs. Bisset and Mr. Goss, who are not before the Court."

"For the above briefly stated reasons the Court dismisses the petition of the plaintiff with the direction that the property now in her hands and under her control shall remain there for a reasonable length of time, if other claimants appear."

"As for the counter claim of the defendant, there is no proof as to his ownership of any of the property he took or now claims, except the fan built into a window which passed under the terms of the lease to the plaintiff, Mrs. Bisset."

"Accordingly, the counter claim of the defendant is also dismissed, and it is further ordered by the Court that the costs in this case be divided equally between the two parties. s/ W. B. Ardery, Judge, Bourbon Circuit Court."

I am of the opinion that the findings of the trial court should be affirmed. The items enumerated are covered by the lease. Certainly, they did not belong to Goss in any instance. If this case had been tried originally before this court the majority opinion might be justified, but such is not the case. This court only has appellate jurisdiction. Section 110 of the Constitution of Kentucky provides, "The Court of Appeals shall have appellate jurisdiction only, which shall be co-extensive with the State."

This court interpreting the above provision has held that we are governed by those matters which occur in the trial court. See City of Jackson v. Terry, 302 Ky. 132, 194 S.W.2d 77. General Trial Jurisdiction in this state is invested in the circuit courts. Section 126 of the present Constitution, also article 4, section 17 of the Constitution of 1850. When these courts proceed within their jurisdiction, make proper findings of fact and conclusions of law, their judgments are binding and should not be disturbed by this court unless their actions are clearly erroneous and manifest an injustice. As late as 1952, we were following this principle. See Story v. Brumley, Ky., 253 S.W.2d 24 where Judge Stanley wrote:

"It is a fundamental rule of appellate practice that the finding of fact by a Judge trying a case without a jury is presumptively correct, and, as in other appeals, the appellant has the duty or burden of clearly showing error. Failing in such, the judgment will be affirmed. Citation of authority for this elementary rule is unnecessary."

For other cases to the same effect, see Creech v. Louisville & N. R. Co., 217 Ky. 301, 289 S.W. 238; Weil v. B. E. Buffaloe & Co., 251 Ky. 673, 65 S.W.2d 704; Preferred Risk Fire Ins. Co. v. Neet, 262 Ky. 257, 90 S.W.2d 39; Cornett-Lewis Coal Co. v. Day, 312 Ky. 221, 226 S.W.2d 951.

The majority opinion in this case pays not the slightest heed to the findings of the trial court and proceeds to dispose of the case as if it had been initially tried before this court. This is an error that any appellate court can easily commit, but it does not persistently happen, in case after case, unless by design. Also in passing, I would like to observe that the majority opinion speaks of Trover and Replevin today under the Civil Rules of Procedure there is only one cause of action and I fail to see how the resurrection of these old ghosts of the past can serve any useful purpose save to he who would open his own graveyard.

For the foregoing reasons, I dissent from the majority opinion.