Nellie FLEMING; Nellie Fleming, as Power of Attorney for Carl Bentley; Herbert Bentley; and Paul Fleming, Jr., Administrator of the Estate of Billy Joe Bentley, Deceased, Appellants

v.

EQT GATHERING, LLC, Appellee

2015-SC-000161-DG

Supreme Court of Kentucky.

FEBRUARY 16, 2017

COUNSEL FOR APPELLANTS NEL-
LIE FLEMING; NELLIE FLEMING,
AS POWER OF ATTORNEY FOR CARL
BENTLEY; HERBERT BENTLEY;
AND PAUL FLEMING, JR., ADMINIS-
TRATOR OF THE ESTATE OF BILLY
JOE BENTLEY, DECEASED: Adam Pe-
ter Collins, Hindman.

COUNSEL FOR APPELLEE EQT
GATHERING, LLC: Michael J. Schmitt,
Candace Smith, John Kevin West, Jona-
than C. Shaw, Paintsville.

### OPINION OF THE COURT BY
### JUSTICE VENTERS

Property owners Nellie Fleming, Carl
Bentley, Herbert Bentley, and Billy Joe
Bentley (Appellants) appeal from a deci-
sion of the Court of Appeals which vacated
a judgment of the Pike Circuit Court
awarding compensatory and punitive dam-
ages for an alleged trespass upon their
land by Appellee, EQT Gathering, LLC
(EQT). The Court of Appeals concluded
that the trial court erred by directing a
verdict in Appellants' favor on the issue of
liability for the trespass and submitting
only the issue of damages for the jury's
determination. The Court of Appeals also
held, *sua sponte*, that the trial was fatally
flawed because the adjoining landowners
were indispensable parties who had not
been joined as parties to the trespass ac-
tion. For those reasons the Court of Ap-
peals vacated the verdict and remanded
the case with directions that, if the case
proceeded, the Meade heirs must be added
as parties to determine the true boundary
location before adjudicating the Appel-
lants' trespass claim.

We agree that the trial court improperly
directed a verdict on the issue of EQT's
liability for the trespass; but we further
conclude that the Court of Appeals erred
in its conclusion that the adjoining land-
owners were indispensable or necessary
parties to Appellants' trespass claim. Man-
dating their involuntary and uninvited par-
ticipation in the trespass action was error.

Accordingly, we affirm in part, reverse
in part, and remand to the trial court for
further proceedings consistent with this
opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The border line between Pike and Letcher Counties also serves as the boundary line between Appellants' land and a tract of land owned by the heirs of Rusha and Barbara Meade (the Meade heirs). Appellants' land lies on the Pike County side of the line; the Meade heirs' land lies on the Letcher County side. EQT is a natural gas transmission company with business interests in the area. When Appellants declined to grant EQT a right of way for an underground natural gas pipeline to be built along the Pike-Letcher boundary, EQT acquired the necessary right of way from the Meade heirs on the Letcher County side of the line.

After construction of the pipeline, Appellants filed a civil action in the Pike Circuit Court alleging that EQT had trespassed upon their land. The alleged trespass consisted of two separate acts. First, Appellants claimed that EQT placed a 150-foot section of the pipeline on their side of the boundary line. Second, Appellants claimed that during the pipeline construction, a bulldozer entered upon their land and damaged a 562 square-foot area of the land's surface.[1]

■ On the day of trial, EQT filed a motion styled "Motion for Entry of Judgment on the Pleadings and Dismissal for Failure to State a Cause of Action." EQT's motion asserted that Appellants' common law trespass action must be dismissed because EQT was an entity statutorily vested with the authority to acquire rights of way by the process of eminent domain; and, if it had in fact placed its pipeline on Appellants' land, their exclusive remedy was a reverse condemnation action rather than a common law trespass claim.[2] The trial court denied EQT's motion; the case proceeded to trial as a common law trespass claim.

Through the testimony of Tommy Wright, its expert surveying witness, EQT acknowledged that during the pipeline construction a bulldozer entered upon Appellants' land and damaged a surface area of about 562 square feet. However, Wright testified without equivocation that according to his survey, no part of the EQT pipeline was placed within the boundaries of Appellants' land. EQT offered evidence to show that the 150-foot section of pipeline in dispute was located entirely in Letcher County on the Meade heirs' land. Nevertheless, at the conclusion of the evidence, the trial court directed a verdict in Appellants' favor on the trespass issue. Specifically, the trial court instructed the jury in writing that "the Defendants entered upon [Appellants'] property to place the gas pipeline *currently located there*, without any right or permission to do so." (Emphasis added.) The jury instructions did not differentiate the two aspects of

---

1. Appellants also sued Western Construction, Inc., a contractor that worked on EQT's pipeline. The jury apportioned 100% of the fault to EQT and 0% to Western Construction. Western Construction did not join the appeal of the verdict.

2. Among the substantive differences between a trespass action and a reverse condemnation action are that punitive damages, recoverable in a common law trespass case, are not available in a reverse condemnation action; and, unlike a common law tort action such as trespass, a reverse condemnation verdict re-

quires a unanimous jury. *Witbeck v. Big Rivers Rural Electric Cooperative Corp.*, 412 S.W.2d 265, 269 (Ky. 1967), overruled on other grounds by *Commonwealth, Department of Highways v. Stephens Estate*, 502 S.W.2d 71 (Ky. 1973) (Punitive damages are not recoverable in a reverse condemnation case.); *Commonwealth, Department of Highways v. Gilles*, 516 S.W.2d 338, 339 (Ky. 1974) ("Damages in condemnation proceedings must be assessed by a unanimous verdict of twelve jurors....").

trespass alleged by Appellants, the surface damage done by the bulldozer and the occupation of Appellants' property by the pipeline. Having instructed the jury that the pipeline was "currently located" on Appellants' land, the trial court then instructed the jury with respect to compensatory and punitive damages. In response, the jury returned a verdict awarding Appellants $15,000.00 in compensatory damages and $75,000.00 in punitive damages. EQT appealed.

The Court of Appeals found that the trial court erred by directing a verdict on the issue of EQT's trespass on Appellants' land. Despite the fact that neither party had raised the issue on appeal and it was never addressed or litigated in the trial court, the Court of Appeals concluded further that upon remand for a new trial, the Meade heirs must be included as parties to the suit before the trespass claim could be resolved. The Court of Appeals then determined that EQT's argument that Appellants' claim could only be maintained as a reverse condemnation suit could not be addressed until "the uncertainty or controversy" surrounding the boundary line between Appellants and the Meade heirs was resolved. We granted discretionary review.

## II. THE TRIAL COURT ERRONE-OUSLY DIRECTED A VERDICT ON TRESPASS LIABILITY

Appellants contend that the Court of Appeals erred by reversing the trial court's decision to direct a verdict on the issue of EQT's trespass. When considering a motion for a directed verdict "the trial court must consider the evidence in its strongest light in favor of the party against whom the motion was made and must give him the advantage of every fair and reasonable intendment that the evidence can justify." *Sutton v. Combs*, 419 S.W.2d 775, 777 (Ky. 1967). "On appeal the appellate court considers the evidence in the same light." *Id.* (citations omitted). A directed verdict is proper when there is a complete absence of pleading or proof on a material issue in the action, or there is no disputed issue of fact upon which reasonable men could differ. *Id.*

Upon review of the evidence and the jury instruction regarding the alleged trespass, we agree with the Court of Appeals that the trial court erred. Despite substantial evidence to the contrary, the trial court instructed the jury that EQT's pipeline was actually located on Appellants' land. EQT's concession, through surveyor Wright, that a bulldozer working for EQT had damaged a 562-square foot area of Appellants' land justified a directed verdict only as to that limited aspect of Appellants' claim. With clearly conflicting evidence concerning the location of the pipeline relative to Appellants' boundary line, instructing the jury that the pipeline was located on Appellants' land was plain error. The fatal flaw of the trial court's instruction is its failure to take into account the two distinct aspects of Appellants' trespass claim: the surface damage caused to a small area by the bulldozer, which was not contested, and the encroachment of the pipeline, which was contested.

In support of the directed verdict and the associated award of damages, Appellants assert that EQT's concession of the bulldozer encroachment established the trespass, and that the trial court's instruction merely affirmed that fact, allowing the jury to determine the scope of the trespass and the compensation to be awarded for the trespass. However, the trial court's instruction was not as open-ended as Appellants suggest. Instructing the jury that the pipeline was "currently located" on Appellants' land "without any right or permission" left no room for a damage award based solely on the bulldozer incursion.

Instead, it compelled an award of damages for the taking of the land occupied by the pipeline despite the conflicting evidence on that issue.

The trial court failed to consider all of the evidence in the light most favorable to EQT, the party opposing the directed verdict, and it failed to recognize the fair and reasonable inferences justified by that evidence. *Sutton*, 419 S.W.2d at 777. Therefore, we affirm the Court of Appeals' decision insofar as it reversed the trial court's award of a directed verdict.

## III. THE MEADE HEIRS ARE NOT INDISPENSABLE PARTIES TO THE LITIGATION

■ Despite the facts the trial court never addressed the question and none of the parties raised the issue on appeal, the Court of Appeals concluded that the Meade heirs have an interest in the litigation that would be affected by the ultimate judgment on Appellants' trespass claims against EQT. Central to the Court of Appeals' analysis was its reliance upon the law pertinent to quiet title actions under KRS 411.120 and to declaratory judgment actions under KRS Chapter 418, notably KRS 418.075 ("When declaratory relief is sought, all persons shall be made parties who have or claim any interest which

would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.").[3] Significantly however, this case is neither a quiet title action nor a declaratory judgment action, and as the case was plead and practiced, the trial court had no capacity to judicially determine the boundary line between Appellants and the Meade heirs, if indeed they ever disputed the location of their common boundary. As established by the pleadings, this is simply a common law trespass action between a property owner and an alleged trespasser.

■ It is true, as noted by the Court of Appeals citing to *Bryant v. Perry*, 284 Ky. 698,145 S.W.2d 1055, 1057 (1940), that the plaintiff in a common law trespass action must show that the act or acts constituting the trespass occurred within the boundary lines of the plaintiff's property.[4] In a trespass action, ownership or possession of the land is an evidentiary fact that must be established by preponderant evidence. Similarly, a plaintiff in a premises liability case must show that the defendant owned or otherwise controlled the allegedly dangerous premises. In both cases, the fact that ownership (or possession) of the land is an element of the tort does not convert the resulting judgment into a declaration of ownership quieting title to the property.

---

3. Specifically, the Court of Appeals said:

Generally speaking, issues regarding boundary lines and title to real estate are questions of law that fall under the circuit court's jurisdiction specified in either KRS 411.120, or the general declaratory action statute, KRS 418.040 *et seq.*; they are also subject to applicable limitations established by the legislature and the assorted rules and precedents of our Courts. *Whitley v. Robertson County*, 396 S.W.3d 890, 897–99 (Ky. 2013). An important limitation established by the legislature is that 'all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall preju-

dice the rights of persons not parties to the proceeding.' KRS 418.075. 2012-CA-000301-MR at 5-6 (Feb. 27, 2015) (unpublished).

4. More precisely, to maintain an action for trespass the plaintiff must present evidence to show either that he owns the land *or* was in actual possession of the affected land at the time of the alleged trespass. *Muse v. Payne*, 144 Ky. 30, 137 S.W. 788, 788 (1911) ("As appellee failed to show that she owned the land, or was in possession thereof, either when the trespass was committed, or when the action was instituted, it follows that she could not maintain the action."); *see Marinaro v. Deskins*, 344 S.W.2d 817, 819 (Ky. 1961).

A defendant in a premises liability action who denies liability by disclaiming ownership of the property does not thereby trigger a title dispute over the property. The defendant in a trespass case may, likewise, challenge the plaintiff's ownership of the property without instigating a boundary line dispute among the neighboring landowners.

Implicit in the Court of Appeals' reasoning is the application of the standard for "indispensable parties" governed by CR 19.01, which provides:

> A person who is subject to service of process, either personal or constructive, shall be joined as a party in the action if (a) in his absence *complete relief cannot be accorded among those already parties*, or (b) he *claims an interest relating to the subject of the action* and is so situated that the disposition of the action in his absence may (i) as a practical matter *impair or impede his ability to protect that interest* or (ii) *leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.* If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(Emphasis added.)

Applying CR 19.01(a) in the context of a trespass action, it is readily apparent that Appellants and EQT can be accorded "complete relief" in the absence of the Meade heirs. If the jury were not satisfied from the evidence that Appellants owned the land on which the pipeline was placed, it would simply render a verdict rejecting their trespass claim. On the other hand, if the jury were satisfied that Appellants owned the land, it would award damages. In either instance, all of the parties to the trespass claim would be accorded complete relief despite the absence of the Meade heirs. In either instance, the verdict would have no effect on the title to the property.

CR 19.01(b)(i) also does not compel the presence of the Meade heirs. A judgment in favor of Appellants on the trespass claim would not impair or impede the Meade heirs' ability to assert or protect their claim of ownership of the land where the 150-foot pipeline section was placed, if indeed they do claim ownership of it. As noted above, the trespass action does not adjudicate the title to the property and the verdict rendered in the trespass action does not establish title. Even if it did, any claim of ownership by the Meade heirs would not be jeopardized by *res judicata* issue preclusion doctrine (also referred to as collateral estoppel) because they were not parties to the trespass litigation. *See Durst v. Amyx*, 13 S.W. 1087, 1088 (Ky. 1890) (adjudication of boundary line dispute did not bar subsequent ownership claims of women who were not made parties to the adjudication, even though their husbands were parties); *see also Miller v. Administrative Office of Courts*, 361 S.W.3d 867, 872 (Ky. 2011) ("The doctrine of issue preclusion is properly asserted by a person who was not a party to the former action nor in privity with such a party." (citations and internal quotations omitted)).

Under CR 19.01(b)(ii), the Meade heirs would be "indispensable parties" to the litigation if their absence would "leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest." EQT is the only party that could conceivably incur

"multiple or inconsistent obligations" since it could theoretically be found liable for trespass by placing the pipeline on Appellants' property and then face a subsequent lawsuit for the same trespass upon the Meade heirs' land. That risk, however, is completely negated in this case because the Meade heirs granted EQT a right of way for the pipeline and have thus consented to EQT's use of their land.

Boundary line disputes among neighbors and family members are among the most contentious forms of litigation and societal discord. That is especially so in regions of this state where the settlers arrived before the surveyors and created a legacy of overlapping land patents and abstruse deeds. Occasionally, boundary line disputes escalate to violence. We see no reason for unnecessarily turning a common law trespass action into a boundary line dispute where the adjoining landowners, and in this instance the adjoining counties of Pike and Letcher, have given no indication that they dispute the location of their common boundary. Appellants' dispute with EQT can be completely and finally resolved without the intervention of the Meade heirs. We conclude that the Court of Appeals erred in directing that the Meade heirs be joined as parties. Accordingly, we reverse that aspect of the Court of Appeals' opinion.

## IV. THE TRIAL COURT PROPERLY REJECTED EQT'S BELATED MOTION FOR JUDGMENT ON THE PLEADINGS

Appellants also contend that the Court of Appeals erred when it declined to affirm the trial court's rejection of EQT's motion to dismiss based upon the failure to assert a claim for reverse condemnation. The Court of Appeals reasoned that whether Appellants should have couched their claim as a reverse condemnation instead of a trespass is an issue that should not be addressed until *after* an adjudication of the boundary line between the Meade heirs and Appellants. Because we reject the notion that the Meade heirs must be made parties in order to litigate their boundary with Appellants, we also reject the conclusion that the reverse condemnation issue must await the formal adjudication of the boundary line between Appellants and the Meade heirs.

Nevertheless, we conclude that the trial court was justified in denying EQT's motion for other reasons. Appellants' trespass claim was set for trial on January 17, 2012. On that day, before the commencement of the trial, EQT presented for the first time a pleading designated as EQT's "Motion for Entry of Judgment on the Pleadings and Dismissal for Failure to State a Cause of Action." The motion asserted that under Kentucky law, Appellants' only remedy against EQT was a reverse condemnation action. CR 12.03 expressly provides for the filing of a motion for "judgment on the pleadings" any time *after* the pleadings are closed "but within such time as not to delay the trial." By failing to present the issue until the day of trial, EQT gave the trial court and the opposing parties no opportunity to fairly consider this purportedly-dispositive issue, virtually assuring that unless denied, the motion would "delay the trial" contrary to CR 12.03's provision.

Accordingly, we find no fault in the trial court's rejection of this last-minute bid to alter the theory of liability with a previously unasserted theory requiring consideration of factual allegations not otherwise established in the record. Since we affirm the Court of Appeals' opinion insofar as it vacates the verdict and remands the case to the trial court for further proceedings, the reassertion of EQT's reverse condemnation defense and the trial issues relating

to that theory of the case are, upon remand, left to the trial court's sound discretion, subject to the applicable rules of civil procedure. We express no opinion on the substantive merits of that claim.

## V. CONCLUSION

For the foregoing reasons, we affirm the opinion of the Court of Appeals insofar as it reversed the directed verdict; however we reverse the opinion of the Court of Appeals insofar as it directed the joining of the Meade heirs in the litigation. This matter is remanded to the Pike Circuit Court for further proceedings consistent with this opinion.

Minton, C.J.; Cunningham, Hughes, Keller, and VanMeter, JJ., sitting. All concur. Wright, J., not sitting.