Aggie **SUTTON** et ál., Appellants,

v.

Evelyn **COMBS** et al., Appellees.

Court of Appeals of Kentucky.

June 30, 1967.

As Modified on Denial of Rehearing
Nov. 10, 1967.

Cecil C. Sanders, Caywood Metcalfe, Lancaster, for appellant.

Charles R. Coy, Chenault, Coy & Sword, Richmond, for appellees.

Henry C. Cox, Lancaster, Guardian Ad Litem for appellee Ricky Sutton.

MONTGOMERY, Judge.

Aggie Sutton et al., as contestants, appeal from the judgment upholding the will of Abbie Marsee in favor of Evelyn Combs et al., appellees. The question on appeal is whether the evidence offered in behalf of contestants is sufficient to present the issue of undue influence.

The appraised value of the estate was $106,408.97. The heirs at law of the testatrix were appellant Aggie Sutton, a sister, who received by the will $100; appellant Kinnaird Bourne, a brother, who received nothing; appellants Nancy Payne and Dorothy Holtzclaw, children of a deceased sister, who each received $500; and Sue DeShon, a sister, who received $500; and other nieces and nephews. The latter, excluding Virginia Black, together with other persons, received about $5,100. A church and cemetery received $2,500. The rest of the estate, about $96,000, was left to a niece, Virginia Black, and Virginia's husband, Elvin, who were named as co-executors.

In contest of the will appellants sought to prove undue influence and the lack of mental capacity. A peremptory instruction removed the issue of lack of mental capacity from the jury's consideration. The jury was unable to agree on the issue of undue influence and the court, under CR 50.02, granted a judgment upholding the will.

Appellants contend that the exclusion of the brother of the testatrix and the inequitable bequests to her living sisters and two nieces of a dead sister, when compared with a devise of practically her entire estate to a niece and her husband, were unnatural, and being unexplained, only slight corroborative evidence was necessary to take the issue of undue influence to the jury.

The test used to determine the validity of a will contains an inquiry as to whether the testator knew the natural objects of his bounty, that is, his relatives and those dear to him, and recognized his obligation to them as such. It is natural that a person recognizes his relatives as the objects of his bounty unless there is some reason not to do so. Many reasons may exist to justify such failure. Undue influence exerted by one or more persons in favor of themselves or others frequently is the reason for an unequal or unnatural distribution of a testator's estate or for a testator's ignoring the natural objects of his bounty. For this reason an unnatural distribution of an estate, unexplained, is a factor for the jury to consider on the issue of undue influence.

■ The rule was stated in Walls v. Walls, 99 S.W. 969, 30 Ky.Law Rep. 948, as follows:

"It has often been said that, if under all the circumstances of the case the will is unnatural in its provisions and inconsistent with the obligations of the testator to the different members of his family, the burden rests upon the propounders to give some reasonable explanation of its unnatural character. * * * Incapacity opens the door to undue influence, and when opportunities for such influence are shown, and the favored devisees are the beneficiaries of a will unnatural in its provisions, to the exclusion of others having equal claims at least upon his bounty, very slight circumstances are sufficient to make the question of undue influence one for the jury."

■ The rule appears to be that an unequal or unnatural disposition by itself is not enough to show undue influence, but when coupled with slight evidence of the exercise of undue influence or the lack of mental capacity it is sufficient to take the case to the jury. Kiefer's Ex'r and Ex'x v. Deibel, 292 Ky. 318, 166 S.W.2d 430. It has been said that a will is the best evidence for or against itself, and a will making a just distribution of a testator's estate will be held as strong evidence of his testamentary capacity; when one turns his property into unnatural channels it raises at least a contrary inference. Gay v. Gay, 308 Ky. 539, 215 S.W.2d 92. Inequity of disposition is a circumstance to be considered on the issue of undue influence. Shelley v. Chilton's Adm'r, 236 Ky. 221, 32 S.W.2d 974. As such, it is one of the recognized "badges" of undue influence. Belcher v. Somerville, Ky., 413 S.W.2d 620. The same rule obtains in cases wherein it is sought to set aside a conveyance because of undue influence. Gay v. Gay, 308 Ky. 545, 215 S.W.2d 96.

■ The purpose of a motion for judgment n.o.v. is the same as that of a motion for directed verdict. It is normally used to save the time and trouble involved in a lengthy jury determination when (1) there is a complete absence of pleading or proof on an issue or issues material to the cause of action or defense, or (2) there are no controverted issues of fact upon which reasonable men could differ. When either motion is made the trial court must consider the evidence in its strongest light in favor of the party against whom the motion was made and must give him the advantage of every fair and reasonable intendment that the evidence can justify. On appeal the appellate court considers the evidence in the same light. Moore's Manual, Federal Practice and Procedure, Section 22.10(1), pages 1630–1632; California Fruit Exchange v. Henry, D.C.Pa., 89 F.Supp. 580, affirmed C.A., 3 Cir., 184 F.2d 517. The trial court sustained the motion for judgment n.o.v. on the ground that considering all of the evidence with all reasonable inferences to be drawn, the evidence was insufficient to support a verdict in favor of the contestants on the ground of undue influence.

■ In reviewing the evidence, as required above, we look to see if there was any evidence of probative value of undue influence or if the evidence favorable to the proponents of the will is so strong that reasonable men could not have differed in concluding that there was no undue influence.

Abbie Marsee was sixty-nine years old at the time of her death. While Garrard County appears to have been her native county, she lived in the adjoining county of Mercer during most of her adult life. Her immediate family, with whom she was very close, had consisted of her husband, who died in 1947, and her son, who died in 1959. Shortly after her son's death, she returned to her native county to be near her relatives. At that time she had two sisters, a brother, and several nieces and

nephews there. Virginia Black, the principal beneficiary, is the daughter of Sue DeShon, a sister.

Charles Matherly, an attorney who lived in Mercer County, had represented the testatrix's husband and son since 1930. He handled the settlement of their estates. The testatrix had relied on her husband and son in handling business matters. Matherly assisted the testatrix in handling her business affairs after their deaths. He handled tax matters for her and examined and approved the title for the home she bought when she moved back to Lancaster. He said that she was terribly upset and disturbed by the deaths of her husband and son, that she was completely demoralized, and that she was not physically or mentally normal. He testified that the testatrix did not know the value and extent of her property and that she was unable to make decisions without depending on someone to help her. It was his opinion that her condition would worsen and, upon examination of the will in question, that she could not have assembled the information contained in the will without a great deal of help. He did not prepare a will for her.

An attorney in Lancaster prepared wills in 1961 and 1962 for the testatrix. He said that the first will was prepared from a list of names and amounts which the testatrix brought with her. The total of the bequests left relatives, other than the Blacks, in the first will was materially reduced in favor of the Blacks in the second will. The Blacks remained as the named personal representatives.

The testatrix had a pulmonary tubercular condition which necessitated regular medical attention. Her physical condition worsened. She went to the hospital for two days' observation in late June 1962, shortly after the will in question was executed on June 21, 1962. A lung abscess was removed on July 5, 1962. She was hospitalized until September 8, 1962, and continued under regular medical care until October 22, 1962. She died on March 3, 1963.

The evidence for appellants is that the testatrix was ill and physically infirm in her late years, that she was nervous, upset, and cried a lot, that she did not know the extent of her property, that she was easily influenced, and that she was mentally incompetent to make a will. Part of this testimony was based on related observations and incidents. The testatrix made various statements, inconsistent with her will, which indicated a desire to benefit certain of her relatives more than they were.

In general, the evidence when viewed in the most favorable light for the appellants shows that they and Abbie's relatives, except Virginia and her husband, had visited Abbie regularly in Mercer County. They continued to visit her and to assist her in many ways after she returned to Lancaster. The relationship between Abbie and all of her relatives appears to have been good.

After Abbie's return, Virginia and Elvin Black began to visit with the testatrix. They took over the doing of small things for Abbie, such as cutting the grass, taking her car riding, shopping, and paying her bills, which had been done by other relatives. Virginia's visits to look after Abbie's needs became daily, which was more often than she visited her mother, who was older and lived in Lancaster. The testatrix was susceptible to flattery. Virginia flattered her and brought her expensive gifts, although she did not do that for her other aunts or her uncle.

In summary, there is evidence from which a jury could conclude that the testatrix and all of her family, except Virginia, had maintained close ties while she lived in Mercer County; that these same ties had existed until her death; and that upon Abbie's return to Lancaster the Blacks began to and did develop a close relationship with her to the extent that by the time of

her death they were handling most of her affairs to the exclusion of her other relatives. The jury could have found that there was no satisfactory explanation why Abbie Marsee should make a will so favorable to the Blacks so late in her life, with minimal or no benefits to other members of her family who were as close or closer than were Virginia Black, a niece, and Virginia's husband. A jury might well have concluded that her state of health may have been a factor in rendering her susceptible to the influence of the Blacks, who were with her daily. It is hard to understand that this older woman who had always been dependent on others would choose in her will to ignore her brother and almost ignore her sisters in favor of one niece. Other nieces and nephews had been kinder and closer to Abbie over the years than had Virginia Black until Virginia supplanted them.

Under the circumstances shown, the evidence was sufficient to present the issue of undue influence. The trial court correctly submitted the case to the jury despite the showing to the contrary made by the Blacks. The showing on behalf of the proponents cannot be said to be so strong that it destroys the testimony in behalf of the contestants to the extent that reasonable men could not have differed in concluding that there was no undue influence. Meuth's Ex'x v. Meuth, 157 Ky. 784, 164 S.W. 63; Helm's Guardian v. Neathery, 226 Ky. 42, 10 S.W.2d 474; Franks' Ex'r v. Bates, 278 Ky. 337, 128 S.W.2d 739; Gay v. Gay, 308 Ky. 539, 215 S.W.2d 92; Marcum v. Gallup, Ky., 237 S.W.2d 862; McKinney v. Montgomery, Ky., 248 S.W.2d 719; Roland v. Eibeck, Ky., 385 S.W.2d 37, 7 A.L.R.3d 992; Ward v. Norton, Ky., 385 S.W.2d 193. It was error to sustain the motion for judgment n.o.v. in favor of the appellees.

Judgment reversed with direction to grant a new trial.

All concur.