**Harold ZEISS et al., Appellants,**

v.

**Norman O. EVANS et al., Appellees.**

Court of Appeals of Kentucky.

Jan. 17, 1969.

Joseph S. Freeland, Paducah, for appellants.

Richard C. Roberts, Waller, Threlkeld & Whitlow, Paducah, for appellees.

CHARLES M. ALLEN, Special Commissioner.

This is an appeal from the judgment of the McCracken Circuit Court entered on a jury verdict setting aside the will of Katie Evans on the grounds of mental incapacity and undue influence.

Mrs. Katie Evans was a widow 78 years of age at the time of the execution of the will. She lived in Paducah. According to the testimony of her physician, Dr. Sullivan, she suffered from uncontrolled diabetes, congestive heart failure, heart disease, and cerebral arteriosclerosis. Dr. Sullivan saw her some 30 times during the years 1962 to 1964 but had not seen her for a little over two months prior to the date of the execution of the will.

In the fall of 1962 Mrs. Evans executed a will leaving all of her property to Nor-

man Evans, her adopted son, and Martha Evans, his wife. At that same time she executed a power of attorney in favor of Norman Evans.

In July 1963, Harold Zeiss, a nephew of Mrs. Evans, and his wife, Marian Zeiss, who lived in Altoona, Pennsylvania, came to Paducah and while there took Mrs. Evans to see an attorney about having the power of attorney previously granted to Mr. Evans revoked. Mr. Lloyd Emery, an attorney, prepared the revocation of the power of attorney pursuant to Mrs. Evans' directions. He directed the appellants to leave the room so that he could prepare the revocation. He stated that he then prepared a will for Mrs. Evans, which left all of her property to the Zeisses on the condition that they would look after her and care for her. Mr. Emery realizing that this will would disinherit Mrs. Evans' only child, her adopted son, arranged for her to see Dr. Bradford to determine if she was mentally capable of making a will.

The Zeisses then took Mrs. Evans to the office of Dr. Bradford, who advised Mr. Emery that Mrs. Evans was perfectly competent. Thereupon Mr. Emery brought the will to the office of Dr. Bradford where it was executed by Mrs. Evans with Mr. Emery, a nurse, and Dr. Bradford as witnesses.

Appellants contend that the trial court should have directed a verdict for them on both the issues, mental incapacity and undue influence. They based their argument on the incapacity issue upon the premise that since all of the witnesses who saw Mrs. Evans on the date of the execution of her will testified that she was alert and bright, there was no substantial evidence to take the case to the jury. With regard to undue influence, they contend that there was no substantial proof of any undue influence being exercised by the appellants.

To determine whether or not appellants' contentions are valid, we must examine the evidence produced by the appellees. There was evidence that during the year before the execution of her will Mrs. Evans cut her wrists in an apparent attempt at suicide. There was evidence that she ran out of her house without being clothed on two occasions. There was evidence that she would sit in a rocking chair in a sort of daze for hours on end and not be able to respond rationally to questions. There was evidence to the effect that she desired one of her grandchildren to share in her estate, which she did not do under the terms of her will. There was the medical testimony of Dr. Sullivan to the effect that her physical ailments had so weakened her mentally that she did not have the requisite ability to make a will. There was evidence that Mrs. Evans thought that Mrs. Lee, an old friend of hers, Norman Evans, her adopted son, and Mrs. Taylor, a caretaker, were stealing her money. There was proof to the effect that Mrs. Evans' attitude towards Jake Zeiss, a brother who lived with her, changed from one of hostility to one of cordiality without any apparent basis for the change.

On the ground of undue influence, the testimony reveals a woman advanced in years suffering from physical infirmities, which included hardening of the arteries. Her nephew and niece, whom she only saw once a year and whom she had not seen in the year previous to the execution of her will, were in constant attendance upon her during the few days of their stay in Paducah when the power of attorney of Mr. Evans was revoked and when the will was drafted giving appellants all of Mrs. Evans' property. It might be added that in the record there appears a letter from Harold Zeiss to Mrs. Evans which reads as follows:

"I think that you should come up if you are not sick in bed. I think you can stand the trip. If you should get sick and have to go to the hospital, I am afraid 'boy' will step in and take over again. Maybe this time you won't be able to get it back."

Zeiss admitted that Norman Evans was the boy he referred to in the letter.

■ We believe that the trial court correctly submitted to the jury the question of mental incapacity of Mrs. Evans. It might be added that the witnesses who testified for appellees were persons who had an opportunity to observe Mrs. Evans on a very frequent basis; whereas, the witnesses for the appellants by and large observed her only on the date of her execution of the will. The cases of Blankenship v. Blankenship, Ky., 389 S.W.2d 933 (1965), and Hollon's Executor v. Graham, Ky., 280 S.W.2d 544 (1954), are convincing authorities for the trial court's action in submitting the case to the jury.

Although Mrs. Evans had expressed her intention to remember her grandchildren in her will, she did not, and she failed to provide anything for her son even though he had the primary care of looking after her during her illness and seeing that she took the necessary medicines and observed the necessary diet.

■ As stated in the case of McKinney v. Montgomery, Ky., 248 S.W.2d 719 (1952), where a will is unnatural in its provisions, such a fact when unexplained and when corroborated by even slight evidence is sufficient to take to the jury the question of undue influence.

■ Undue influence is a subtle thing and can rarely be shown by direct proof. However, many of the "badges" of undue influence stated in Belcher v. Somerville, Ky., 413 S.W.2d 620 (1967), were present:

1. The testatrix was physically weak and according to the evidence of the appellees mentally impaired.

2. The will was unnatural in that it omitted the only son of the testatrix.

3. There had been no particular closeness in the testatrix's relations with Harold Zeiss before the will was written.

4. The beneficiaries participated in the arrangements leading up to the preparation of the will, although they deny that they had any knowledge that a will was actually prepared. In this connection it might be noted that there was testimony that indicated that appellants did know that Mr. Emery had prepared a will for Mrs. Evans.

5. Harold Zeiss, by letter of December 20, 1963, to Mrs. Evans, stated that she should come to Altoona because he was afraid that "boy" would step in and take over again. "Boy" was Mrs. Evans' way of referring to Norman Evans, and this letter is evidence of Harold Zeiss' effort to restrict Mrs. Evans' contact with Norman Evans.

We find the trial court correctly submitted both issues, mental incapacity and undue influence, to the jury. Therefore, the judgment of the trial court is affirmed.