**Debra D. WILLIAMS, Appellant,**

v.

**Barry D. VOLLMAN, Appellee.**

**No. 86–CA–2548–MR.**

Court of Appeals of Kentucky.

Oct. 23, 1987.

Brucie Waggener Hooks, Wesley, Simpson & Hooks, Morganfield, for appellant.

Richard S. Taylor, Taylor, Meyer and Hutchinson, Owensboro, for appellee.

Before HOWERTON, C.J., and COMBS and REYNOLDS, JJ.

COMBS, Judge.

This is an appeal from a judgment of the Daviess Circuit Court granting a directed verdict in favor of appellee.

Appellant filed an action contesting the last will and testament of her grandfather, William H. Mattingly, on the grounds of undue influence, and mental incapacity.

The testator died on February 19, 1985, at a nursing home in Owensboro, Kentucky. He was ninety-one years old. He was survived by his daughter, Louise Stringer, and her three children, Kim Payne, Karen Schauman and the appellee;

the appellant is the only child of a predeceased daughter.

The testator's wife and daughter (appellant's mother) both died in May of 1984. This fact was never revealed to the testator for fear that the bereavement might weaken his resolve to live. Consequently, at the time the will in issue was executed, the testator was unaware that his wife and daughter had predeceased him.

At trial, appellant claimed that the testator lacked the mental capacity to execute a will and that appellee exercised undue influence upon him. The evidence revealed that appellee had lived in the basement of his grandfather's home for some nine years prior to his death. Appellee never prevented any person from visiting with the testator. However, appellee exclusively managed testator's monetary affairs.

Appellee acknowledges that he wrote two different wills for the testator approximately four to five months before his death. The first will which devised the testator's house to appellee and an adjoining lot to appellee's sister, Kim Payne, was never presented to the testator. The second will which was executed by the testator devised both the house and the adjoining lot to appellee.[1] Appellee claims that he wrote the second will at the testator's request.

Appellee sent the second will by way of his mother to the testator. Several days later the will was read to the testator, and subsequently executed.

Anna Sandefur, one of the witnesses to the signing of the will, testified that neither appellee nor his mother was present when the will was executed.

At the close of appellant's evidence, the trial court granted appellee a directed verdict. On appeal, the single issue is whether the trial court erred, as a matter of law, in holding that there was no evidence of probative value of mental incapacity and/or no evidence of probative value of undue influence.

In *Taylor v. Kennedy,* Ky.App., 700 S.W.2d 415, 416 (1985), the court stated as follows:

In ruling on . . . a motion for a directed verdict . . ., a trial court is under a duty to consider the evidence in the strongest possible light in favor of the party opposing the motion. Furthermore, it is required to give the opposing party the advantage of every fair and reasonable inference which can be drawn from the evidence. And, it is precluded from entering . . . a directed verdict . . . unless there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable men could differ. *See Sutton v. Combs,* Ky., 419 S.W.2d 775 (1967).

"On appeal the appellate court considers the evidence in the same light." *Sutton,* at 777.

In its judgment directing a verdict for the appellee, the trial court ruled that there was a complete absence of proof on the issue of mental incapacity. Viewing the evidence in the strongest possible light in favor of appellant, we find that the trial court's ruling was correct.

"We have often said that any person of sufficient mind to know his property, the objects of his bounty and his duties to them, and to act according to a fixed purpose may make a will, and that we will guard jealously this right in the aged and infirm." *Waggener v. General Association of Baptists,* Ky., 306 S.W.2d 271, 273 (1957). Furthermore, after appellee established due execution of the will, the burden of contesting the will was on the appellant.

The appellant relies heavily on the fact that the testator did not know his wife and daughter had predeceased him. She argues that this fact proves that the testator did not know the natural objects of his bounty.

Appellant misses the point of *Waggener,* for the court does not require that the testator have actual knowledge of the objects of his bounty. Rather, the court requires that the testator have "sufficient

---

1. The wills were handwritten by appellee.

mind to know" the objects of his bounty. *Id.*

■ While his physical health was poor, the evidence adduced at trial indicates that the testator's mental faculties were intact. There is no doubt that the testator would have understood that his wife and daughter were dead had the family seen fit to inform him.[2] Furthermore, he recognized his relatives and neighbors, and he would often inquire about how his great-grandchildren, his wife (deceased), and his daughter (deceased) were fairing. In contrast, the appellant elicited no evidence which could indicate that the testator lacked the required mental capacity. Accordingly, we hold that the trial court was correct in directing a verdict on the issue of mental capacity.

The trial court also ruled that there was a complete absence of proof on the issue of undue influence. Viewing the evidence in the strongest possible light in favor of appellant, we find this ruling was erroneous.

In *Copley v. Craft*, Ky., 312 S.W.2d 899, 900 (1958), the court stated as follows:

> Undue influence which will justify setting aside a will is such influence as obtains dominion over the mind of the testator to such an extent as to destroy his free agency in the disposal of his estate, and constrains him to do that which he would not have done if left to the free exercise of his own judgment. Undue influence must be shown to have been exercised at the time the will was executed. It is not sufficient that it be shown that there was merely an opportunity to exercise undue influence, but *some evidence must be adduced showing circumstances from which it can reasonably be inferred that undue influence was exerted.* [Emphasis added.]

Generally, the facts and circumstances leading up to the execution of the will must be relied upon to establish that undue influence was exerted. *McKinney v. Montgomery*, Ky., 248 S.W.2d 719, 721 (1952).

■ In the instant case, the disposition disinherited the testator's only living child and all of his grandchildren except one— the appellee. On its face, this is an unnatural and unequal disposition. *See Bennett v. Bennett*, Ky., 455 S.W.2d 580, 582 (1970). "... [A]n unequal or unnatural disposition by itself is not enough to show undue influence, but when coupled with slight evidence of the exercise of undue influence ... it is sufficient to take the case to the jury." *Id.* (citing *Sutton*, 419 S.W.2d 775).

In this case, there is other evidence of undue influence. Appellee prepared two different wills for the testator. The inference to be drawn from this evidence is that the testator would have signed either will presented to him. In any event, active participation by an interested party in the preparation of a will is circumstantial evidence tending to prove the exercise of undue influence. *See Hollon's Executor v. Graham*, Ky., 280 S.W.2d 544, 547 (1954); *Gay v. Gay*, 308 Ky. 539, 215 S.W.2d 92, 95 (1948). Hence, the issue of undue influence should have been submitted to the jury.

For the reasons stated herein, the judgment of the Daviess Circuit Court is affirmed in part, and reversed and remanded in part for proceedings consistent with this opinion.

REYNOLDS, J., concurs.

HOWERTON, C.J., dissents and furnishes separate opinion.

HOWERTON, Chief Judge, dissenting.

I respectfully dissent on the issue of undue influence. I would affirm Judge McDaniel's directed verdict. I find only opportunity and possible suspicion of undue influence. There was no proof of undue influence, and the disposition of Mr. Mattingly's property was not so unnatural in light of all circumstances. Mere oppor-

---

2. The testator's wife had been mentally and physically incapacitated for several years prior to her death: the testator's daughter lived in Indiana prior to her death.

tunity is not sufficient to support a finding of undue influence.

In hindsight, it would have been more satisfactory to have had the jury decide the question. The jurors should have upheld the validity of the will, but if they had not, a judgment n.o.v. could have been considered. The case was ready to be presented to the jury, and a finding of no undue influence would have solidly settled the issue.

Nevertheless, I see no need to retry this case. In my opinion, the totality of the facts, and a reasonable interpretation of them, support the directed verdict.