RENDERED: JUNE 24, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0972-MR

WILMA ENGLAND, ON BEHALF OF
HER TWO MINOR
GRANDCHILDREN, AND HEIRS-AT-
LAW OF CURTIS H. "BUDDY"
YEARY; AND TONY ENGLAND, ON
BEHALF OF HIS TWO MINOR
GRANDCHILDREN, AND HEIRS-AT-
LAW OF CURTIS H. "BUDDY"
YEARY                                                                APPELLANTS


|         | APPEAL FROM BELL CIRCUIT COURT |
|---------|-------------------------------|
| v.      | HONORABLE ROBERT V. COSTANZO, JUDGE |
|         | ACTION NO. 18-CI-00098        |


SUSAN M. HEINRICH, IN HER
CAPACITY AS EXECUTRIX OF THE
CURTIS H. "BUDDY" YEARY
ESTATE, AND THE TRUSTEE OF
THE INTER VIVOS TRUST OF
CURTIS H. "BUDDY" YEARY; AND
SANDRA KAY BENNETT, IN HER
CAPACITY AS GUARDIAN AND
NEXT OF FRIEND TO CORA ANN
YEARY, A MINOR CHILD, AND THE
BENEFICIARY OF THE INTER
VIVOS TRUST OF CURTIS H.
"BUDDY" YEARY                                                           APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, COMBS, AND MAZE, JUDGES.

COMBS, JUDGE: This case arises out of probate law. Wilma England and Tony England, on behalf of their two minor grandchildren (N.L. and M.L.), appeal the summary judgment and order of the Bell Circuit Court entered in favor of Susan Heinrich, executrix of the Estate of Curtis Yeary and trustee of his *inter vivos* trust, dismissing Sandra Kay Bennett as guardian of Cora Ann Yeary, a minor and sole beneficiary of the trust funded by the decedent's estate. The Englands contend that the circuit court erred by failing to apply the provisions of Kentucky's pretermitted heir statute. Additionally, they contend that the court erred in concluding that they failed to present evidence sufficient to show that Yeary lacked the capacity necessary to execute a will and to amend his *inter vivos* trust. After our review, we affirm.

The material facts are not in dispute. Curtis Yeary's daughter, Cora Ann, was born on June 4, 2007. The parental rights of Cora Ann's mother were terminated on September 10, 2015. The results of a paternity test reported on November 5, 2015, indicated that Yeary was also the father of twins, N.L. and M.L., born November 3, 2013. Curtis Yeary was treated for multiple myeloma

from March 2014 through October 2017; he died in Bell County on November 5, 2017.

Pursuant to the terms of Yeary's will, executed on November 10, 2015, the decedent's estate funded an *inter vivos* trust established by Yeary on August 10, 1998. Susan Heinrich, executrix of the will, is the trustee; Cora Ann is its primary beneficiary. The terms of the trust were amended on June 2, 2016, expressly to acknowledge and to exclude from its terms any provision for N.L. and M.L.

On March 15, 2018, the Englands filed a complaint in Bell Circuit Court against Susan Heinrich on behalf of N.L. and M.L., their grandchildren. They alleged in part that Curtis Yeary was not of sound mind when he executed his will on November 10, 2015. Consequently, they asked that it be set aside. Several months later, the complaint was amended to include Sandra Kay Bennett, Cora Ann's guardian, as a party-defendant. After answers were filed, a period of discovery began.

In June 2019, Heinrich filed a motion for summary judgment. She contended that no evidence had been produced to show that Curtis Yeary lacked testamentary capacity when he executed his will on November 10, 2015. In response, the Englands observed that Yeary acknowledged in his will only one living child, Cora Ann. They contended that the failure of Yeary to acknowledge

the existence of N.L. and M.L. meant that they should be characterized as pretermitted heirs with rights to inherit under the provisions of KRS[1] 394.382. They contended that more discovery was necessary with respect to the issue of Yeary's capacity to execute the will. Discovery was allowed to continue.

Heinrich renewed her motion for summary judgment on November 9, 2020. Oral arguments were conducted before the circuit court on November 23, 2020. The Englands argued that medical evidence showed that Yeary complained to his treating physician of "memory impairment and cognitive issues" just weeks before the provisions of his *inter vivos* trust were amended specifically to exclude M.L. and N.L. Thus, they contended that genuine issues of material fact precluded entry of summary judgment.

On April 12, 2021, Heinrich again renewed her motion for summary judgment. She argued that no genuine issue of material fact precluded entry of summary judgment because Yeary's treating physician "declared, without equivocation, that the Decedent's mental condition on November 10, 2015 (the day that the will of the decedent was signed) was in fine condition for making a will." Heinrich observed that Yeary's treating physician "declared throughout his deposition that the decedent was fully capable of knowing what he was doing and for whom he was doing it when the will was signed on November 10, 2015."

---

[1] Kentucky Revised Statutes.

Heinrich observed that Yeary's estate planning attorney testified in her deposition that Yeary clearly expressed his intention specifically to exclude M.L. and N.L. from his estate plan and that this attorney never had a doubt about Yeary's ability to make decisions concerning the disposition of his estate. Finally, Heinrich argued that the provisions of Kentucky's pretermitted heir statute did not apply to the uncontested facts of the dispute. A final oral argument was conducted on June 28, 2021.

By an order entered on July 21, 2021, the Bell Circuit Court granted summary judgment to Heinrich. The court concluded that the evidence established unequivocally that Yeary **intended** to exclude M.L. and N.L. from sharing in his estate. The court cited the strong presumption that Yeary possessed testamentary capacity at the time he executed the disputed will, and it concluded that the Englands had failed as a matter of law to satisfy their burden of demonstrating their claim of testamentary incapacity. Finally, the court concluded that the provisions of Kentucky's pretermitted heir statute did not apply. The Englands' motion to alter, amend, or vacate was denied by order of the court entered on September 21, 2021. The action was dismissed in its entirety by order of the court entered September 23, 2021. This appeal followed.

On appeal, the Englands contend that the trial court erred by granting summary judgment. They argue that the court erred by concluding that M.L. and

N.L. did not qualify as pretermitted heirs pursuant to the provisions of KRS 394.382 and by concluding that they failed to produce evidence sufficient to show that Yeary lacked testamentary capacity.

Summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[2] 56.03. In conducting our review, we must consider whether the trial court correctly determined that there were no genuine issues of material fact concerning Yeary's capacity to dispose of his estate and whether it properly concluded that M.L. and N.L. do not qualify as pretermitted heirs under Kentucky's statute. *See Scifres v. Kraft*, 916 S.W.2d 779 (Ky. App. 1996). Because summary judgment involves only questions of law and not the resolution of disputed material facts, we do not defer to the trial court's decision. *Goldsmith v. Allied Building Components, Inc.*, 833 S.W.2d 378 (Ky. 1992). Instead, we review the trial court's interpretations of law *de novo*. *Cumberland Valley Contrs., Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644 (Ky. 2007).

We are persuaded that the trial court did not err by concluding that the provisions of KRS 394.382 are inapplicable. Testators are presumed to intend to

---

[2] Kentucky Rules of Civil Procedure.

provide for the natural objects of their bounty. *Biggs v. Fidelity & Columbia Trust Co.*, 273 Ky. 54, 115 S.W.2d 298 (1938). To that end, the provisions of Kentucky's pretermitted heir statute were enacted to protect a testator and his children from an **unintentional omission** from a testator's will. The statute was patterned after the original Uniform Probate Code and it provides to an unintentionally omitted child a share of the decedent's estate equal in value to that which he or she would have received had the testator died intestate. However, its provisions apply only to children "born or adopted after the execution of [the] will." KRS 394.382(1). M.L. and N.L. were born more than two years **before** Yeary executed his will in November 2015. Because neither M.L. nor N.L. was born or adopted after the execution of Curtis Yeary's will, the statute's provisions are immaterial to the parties' dispute.

We also find no error in the trial court's conclusion that the Englands failed to produce evidence of incapacity sufficient to defeat the motion for summary judgment. In *Bye v. Mattingly*, 975 S.W.2d 451, 455-56 (Ky. 1998), the Supreme Court of Kentucky held as follows:

> In Kentucky there is a strong presumption in favor of a testator possessing adequate testamentary capacity. This presumption can only be rebutted by the strongest showing of incapacity. Testamentary capacity is only relevant at the time of execution of a will.
>
> . . .

The degree of mental capacity required to make a will is minimal. The minimum level of mental capacity required to make a will is less than that necessary to make a deed, or a contract.

To validly execute a will, a testator must: (1) know the natural objects of her bounty; (2) know her obligations to them; (3) know the character and value of her estate; and (4) dispose of her estate according to her own fixed purpose. Merely being an older person, possessing a failing memory, momentary forgetfulness, weakness of mental powers or lack of strict coherence in conversation does not render one incapable of validly executing a will.

(Citations omitted.)

While Yeary suffered the effects of cancer and underwent treatment for years, the Englands presented no evidence demonstrating that he lacked testamentary capacity at the time he executed his will on November 10, 2015. In contrast, Heinrich offered strong evidence in support of her motion for summary judgment to show that Yeary possessed the minimal capacity necessary to execute the will.

Dr. Richard Lee, an oncologist practicing in Tennessee, treated Yeary from March 2014 through October 2017. Dr. Lee reported in April 2019 that Yeary "appeared to me to be competent to handle his financial and legal affairs during the . . . years under my care." Although Yeary reported to Dr. Lee in May 2016 that he was experiencing memory issues to an extent that affected his ability to manage his various businesses, Dr. Lee rejected the idea that Yeary was: unable

to understand the nature and extent of his estate; unable to make a plan to dispose of his estate; or unable to recognize both the objects of his bounty and his obligations to them. In his deposition, Dr. Lee recounted that Yeary "had enough sense to get inside my office and ask me questions and talk to me about his medications."

In her affidavit, Yeary's estate planning attorney stated as follows:

> In my meetings and phone conversations with Curtis Yeary during 2015 and 2016, I found him to be fully aware of the extent of his Estate. When the Will was revised in 2015, I asked Mr. Yeary to consider providing written instructions for the management of his business interests, which could be given to his Executor/Trustee, in the event of his death. He prepared the instructions and a detailed list of his current holdings. He knew who his family was. He intended to ensure that Cora Ann Yeary would have sufficient resources. She was the daughter he was raising as the sole custodial parent. It is my opinion that at all times when I was working with him in 2015 and 2016, [Yeary] was competent and not under anyone else's influence.

In her affidavit, Sally A. Simpson, Yeary's accountant, stated as follows:

> Curtis H. Yeary was my client from 1998 until his death on November 5, 2017. I provided accounting and tax preparation services for his various companies and his personal income tax returns.
>
> Mr. Yeary actively participated in all of his business and rental operations. He personally made operational

-9-

decisions related to all of the activities. I was generally meeting with him at his office at least twice a month and had frequent telephone conversations with him. He continued to work at his office until shortly before his death and continued to make business decisions by telephone from his home after that.

In my opinion, [Yeary] was fully competent and capable of making both business and personal decisions until the last few weeks before his death on November 5, 2017.

Nothing in the evidence presented to the circuit court casts doubt upon Yeary's competency to dispose of his estate on the date he executed his will. Moreover, the circuit court did not err by failing specifically to address Yeary's testamentary capacity at the time his *inter vivos* trust was amended on June 2, 2016. Not only was the entirety of the Englands' evidence of Yeary's incapacity negligible, but it was also patently irrelevant as it pertained solely to Yeary's state of mind **after** he executed his will in November 2015. A trust does not become a testamentary disposition of property by virtue of its being funded upon the death of the grantor or of the grantor's retention of the right to amend the trust instrument in whole or in part. KRS 394.065; KRS 394.076.

Finally, we specifically reject the Englands' contention that Yeary lacked testamentary capacity because he failed to recognize the natural objects of his bounty. The Englands contend that Yeary was unaware "or at least in complete denial of the fact" that M.L. and N.L. were his biological children. They argue that

this state of mind meant that Curtis Yeary lacked the capacity to make a will on November 10, 2015. We disagree for two reasons.

First, undisputed evidence tends to show that Curtis Yeary knew or strongly suspected that he had fathered M.L. and N.L. He asked about the children, gave them gifts, visited with them, and spoke with them by telephone. The DNA tests results were available days before he executed his will. Moreover, the circumstances underlying his decision not to provide for M.L. and N.L. in his estate plan (*i.e.*, Cora's precarious financial situation and his natural affection for her) were disclosed by the attorney who advised Curtis Yeary and prepared the disputed instruments. Disappointment or disagreement as to dispositions in a will cannot be validly attributed to incapacity where there exists a reason for the testator's disposition of his estate. *Cecil's Ex'rs v. Anhier*, 176 Ky. 198, 195 S.W. 837 (1917).

Second, even if it had been shown that Yeary was unaware at the time he executed his will that M.L. and N.L. were his biological children, that fact alone would not indicate that he lacked the ability to comprehend the natural objects of his bounty or the ability to appreciate his moral duty to consider them in the disposition of his estate. It is not required that the testator have actual knowledge of the objects of his bounty. *Williams v. Vollman*, 738 S.W.2d 849, 850-51 (Ky.

-11-

App. 1987). Instead, he must have "sufficient mind to know" the objects of his bounty. *Id.*

As adequately established by testimony, Yeary was not delusional. He had valid reasons to question the children's paternity initially. Furthermore, the DNA results were available prior to his execution of the will.

There is no genuine issue of material fact, and the circuit court did not err by concluding that Heinrich and Bennett were entitled to judgment as a matter of law.

We affirm the judgment of the Bell Circuit Court.


ALL CONCUR.


BRIEF FOR APPELLANTS:        BRIEF FOR APPELLEES:

John M. Gambrel              James A. Ridings
Pineville, Kentucky          London, Kentucky