RENDERED:  AUGUST 16, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0965-MR

DARRICK AUSTIN                                                            APPELLANT


                      APPEAL FROM JEFFERSON CIRCUIT COURT
v.                   HONORABLE BRIAN C. EDWARDS, JUDGE
                      ACTION NO. 21-CI-004847


SUSAN PATTON AND
BILLY FREEMAN, JR.,
INDIVIDUALLY AND IN HIS
CAPACITY AS EXECUTOR OF THE
ESTATE OF ROBERT LANDERS, SR.                                            APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, L. JONES, AND LAMBERT, JUDGES.

CETRULO, JUDGE:  Decedent testator's son challenged his father's will on

grounds of lack of testamentary capacity and undue influence.  The Jefferson

Circuit Court granted summary judgment in favor of the beneficiaries and

dismissed the action.  After review, we affirm.

## I.    BACKGROUND

In June 2019, Robert Landers, Sr. (the "testator," or "father"), executed the will in question at 83 years old.  In the will, the testator named his long-time paramour, appellee Susan Patton ("Susan"), as primary heir and primary executor, and her son, appellee Billy Freeman, Jr. ("Billy"), as successor heir and successor executor (jointly, "the heirs").  Additionally, the will stated, "I intentionally leave nothing to my four (4) children."  The testator made one special bequest – his firearms to his brother – but bequeathed the residue of his estate to Susan.  The record is inconsistent as to what comprised the estate,[1] but it *may* have included a residence in Louisville; one-third interest in two lots in Louisville; household goods; two boats; a yellow bulldozer, and a blue farm tractor.

In February 2021, approximately 19 months after executing the will, the testator died at 84 years old.  According to his death certificate, the testator died of "sepsis; chronic obstructive pulmonary disease; CKD [chronic kidney disease], stage III; CHF [congestive heart failure]; dementia[.]"[2]

---

[1] In October 2021, the heirs argued that the testator had "nary a penny to his name[,]" but there were competing probate petitions in Jefferson District Court listing varying assets and values. Darrick's probate petition – Case No. 21-P-001090 – estimated the testator's assets at approximately $231,603.  Billy's probate petition – Case No. 21-P-001241 – estimated an overlapping, but distinct, list of assets at $329,150.  We take judicial notice of these probate petitions located within the online Kentucky court system. *See Polley v. Allen*, 132 S.W.3d 223, 226 (Ky. App. 2004).

[2] In a February 2022 order, the circuit court stated the testator died "presumably from dementia or Covid-pneumonia."

In August 2021, appellant Darrick Austin ("Darrick"), one of the testator's children, filed a complaint in Jefferson Circuit Court alleging the testator's will was invalid due to a lack of testamentary capacity and undue influence. Darrick argued the testator suffered from dementia and other mental illness, and that the will itself evidenced a lack of capacity as the testator had seven living children, not four.[3] Also, Darrick asserted the heirs exerted undue influence over the testator and improperly prevented contact between the testator and his children prior to his death. Billy, as executor, and Susan, as primary heir, responded and denied Darrick's accusations.

In October 2021, Darrick moved for summary judgment. He again challenged the will due to lack of capacity and undue influence, and submitted a personal affidavit citing examples of the testator's poor mental health including: the testator caused one of his children to die from malnutrition, caused two other children to be hospitalized from malnutrition, was convicted of sodomizing one of his daughters, bequeathed items to a previously deceased brother, destroyed a boat with a bulldozer after forgetting he had earlier given the boat away, repeated statements "over and over, within the same hour," and appeared generally unwell.

---

[3] The parties seem to agree that the testator bore eight children, seven of whom lived past childhood. Besides that one childhood death, it is unclear from the record when any of the other children might have died. More importantly, it is unclear how many of the testator's children were alive at the time the testator executed his 2012 will and/or his 2019 will. This is of particular curiosity because in November 2021, Darrick filed pleadings in the correlated probate action that stated he was the testator's "only surviving child."

The heirs objected and argued Darrick had not met his burden of establishing a lack of testamentary capacity. The heirs admitted that the testator did misstate in the will how many children he had, but it was sufficient that he "knew he had children that he needed to disinherit for [Susan] to receive his gifts[.]" Further, they supported their argument with an affidavit from the estate attorney who prepared wills for the testator in 2012 and again in 2019.

In 2012, according to the estate attorney's affidavit, the testator contacted him for a last will and testament, living will, and durable power of attorney. At that time, the testator "specifically indicated" that he had four children and "specifically discussed" disinheriting his four children by way of his last will and testament. According to the affidavit, the estate attorney prepared and executed a will for the testator in 2012, essentially leaving everything to Susan and nothing to his children.

Then, according to the affidavit, the testator contacted the estate attorney in June 2019 for changes to the previous will, specifically, a change of the successor executor. The affidavit implies the change in successor trustee was the only substantive change, and the 2019 will was "nearly identical" to the 2012 will. In the affidavit, the estate attorney stated that on the day the testator executed the will, June 27, 2019, the testator

> was of sound mind and clearly intended his estate to pass to his longtime partner, Susan Patton. We shared

conversation and, at no time leading up to or during our meeting on June 27, 2019, do I believe [the testator] lacked the requisite capacity necessary to execute a valid will under applicable Kentucky law.

In February 2022, the circuit court denied Darrick's motion for summary judgment ("2022 Order"). The 2022 Order stated that the testator had eight children throughout his lifetime: five children with his first wife (one of whom died young, and one he was convicted of raping and sodomizing); and three children with his second wife. The court determined that while the testator might not have had *actual* knowledge of his children, he had *sufficient mind to know* the objects of his bounty and "it is possible that [the testator] merely didn't know how many of his children were still living, etc. because the family was not close and he did not keep up with the whereabouts of his children; or that he unfortunately did not care about his children since the family had a disordered past."

The action continued for more than a year, and in February 2023, the heirs moved for summary judgment. The Jefferson Circuit Court allotted additional time for Darrick's reply, but ultimately granted the heirs' motion in August 2023. In the order granting the heirs' motion for summary judgment ("2023 Summary Judgment"), the circuit court stated that Darrick had not presented sufficient evidence to support his claims of undue influence or lack of testamentary capacity. The court stated,

[t]here is no evidence that [the heirs] were present during the execution of the will or that they had any involvement whatsoever in the execution of the will. In addition, despite [Darrick's] averments to the contrary, there has been no affirmative evidence presented to support the claim that [the testator] lacked mental or physical capacity to make testamentary decisions and the involvement of legal counsel in the process contradicts any such inference. Accordingly, [Darrick] has failed to show any of the necessary "badges of undue influence" to support his claim[.]

Darrick appealed.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rule of Civil Procedure ("CR") 56.03. As this is a legal question involving no factual findings, we review the grant of summary judgment *de novo*. *Brown v. Griffin*, 505 S.W.3d 777, 781 (Ky. App. 2016) (citation omitted). "[T]he proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). While the Court in *Steelvest* used the word "impossible" in describing the strict standard for summary judgment, the Kentucky

Supreme Court later stated that that word was "used in a practical sense, not in an absolute sense." *Perkins v. Hausladen*, 828 S.W.2d 652, 654 (Ky. 1992).

### III. ANALYSIS

On appeal, Darrick argues the circuit court erred in granting the heirs' motion for summary judgment because – under these circumstances – the issues of testamentary capacity and alleged undue influence were matters for a jury to decide, not a court on a motion for summary judgment. Darrick's argument has merit, but due to a lack of evidentiary support, we have no choice but to affirm.

Kentucky abides by the doctrine of testatorial absolutism, and courts in the Commonwealth protect a citizen's privilege to draft wills to dispose of property. *Getty v. Getty*, 581 S.W.3d 548, 554 (Ky. 2019). A testator may divide his estate as he sees fit, albeit with a few requirements.

> To validly execute a will, a testator must: (1) know the natural objects of her bounty; (2) know her obligations to them; (3) know the character and value of her estate; and (4) dispose of her estate according to her own fixed purpose.

*Bye v. Mattingly*, 975 S.W.2d 451, 455-56 (Ky. 1998) (internal citations omitted).

First, Darrick argues the will is invalid due to a lack of testamentary capacity.[4] That is no easy feat; proving a lack of testamentary capacity is an

---

[4] The heirs argue that Darrick did not properly preserve this argument because he did not appeal the 2022 Order adjudicating that argument. However, we do not agree. The 2022 Order *did*

"onerous burden." *Rothwell v. Singleton*, 257 S.W.3d 121, 124 (Ky. App. 2008).

"In Kentucky there is a strong presumption in favor of a testator possessing adequate testamentary capacity. This presumption can only be rebutted by the strongest showing of incapacity." *Mattingly*, 975 S.W.2d at 455 (citations omitted).

Darrick asserts his father had dementia, as listed on his death certificate, and it was that dementia that affected his testamentary capacity. However, Darrick does not link the testator's mental health at the time he executed the will to the dementia diagnosis included at the time of his death 19 months later. Moreover, Darrick cited specific examples of his father's mental health lapses but relied only on his own testimony to demonstrate his father's poor mental health; he did not present mental health assessments[5] or other corroborating witnesses. Even assuming dementia was relevant at the time the testator executed the will, opinions alone are not enough to rebut the default presumption that the testator signed during a lucid interval. *See Warnick v. Childers*, 282 S.W.2d 608, 609 (Ky. 1955); *see also Mattingly*, 975 S.W.2d at 456. "Merely being an older person, possessing

---

address this argument, but that order was interlocutory and not appealable because it did not contain finality language nor adjudicate all the claims and rights of the parties. *See* CR 54.02.

[5] Darrick's complaint asserts that the testator's poor mental health was documented by "medical records generated by the Louisville VA Hospital and other care providers" but it is unclear where or if those documents were presented to the circuit court prior to summary judgment. While we are extending great deference and leniency to Darrick as a *pro se* litigant, we will not scour the record to decipher if and what arguments are properly and timely supported.

a failing memory, momentary forgetfulness, weakness of mental powers, or lack of strict coherence in conversation does not render one incapable of validly executing a will." *Getty*, 581 S.W.3d at 554. In Kentucky, only a minimum level of mental capacity is required to make a will, less than that necessary to make a deed or sign a contract. *Id*. (citations omitted). Darrick did not present corroborating evidence to the circuit court to support those claims of incapacity. Rather, he points to the will itself as further evidence.

Darrick asserts the will on its face establishes a decisive lack of testamentary capacity because the testator made an unnatural distribution and inaccurately stated the number of the natural objects of his bounty. Through birth certificates, Darrick established that the testator had eight children, seven of whom survived past childhood. Yet, the will states, "I intentionally leave nothing to my four (4) children." The will does not elaborate on those familial relationships nor is it clear why the testator believed he had only four children at that time (in 2012 and again in 2019). Darrick is correct that to validly execute a will, a testator must know the natural objects of his bounty, but under these circumstances, that inaccurate number *alone* – without at least anecdotal or circumstantial evidentiary support – is not enough to overcome the presumption of testamentary capacity.

True, the will is unnatural in its provisions (excluding his children), but the mere fact that a testator made an unequal distribution of his estate between

his children does not inherently prove a lack of testamentary capacity.  *See Bottom v. Bottom*, 106 S.W. 216, 217 (Ky. 1907); *see also Gerard v. Gerard*, 350 S.W.2d 719, 722 (Ky. 1961) (finding that a choice to disinherit a child, whether just or unjust, does not mean that the testator lacks the capacity to make a will).  *See Wallace v. Scott*, 844 S.W.2d 439, 441 (Ky. App. 1992) ("[M]erely because one happens to be the offspring of a testator does not *entitle* one to be included in an estate.").  If Darrick had established that the family was close-knit, lived near each other, stayed connected in each other's lives, or the like, then inaccurately stating how many children he had at that time *could* be fatal to a will.  However, the evidence points to a fractured family with a tumultuous past.  Darrick did not establish that any children other than himself communicated with their father in the years before his death, nor did Darrick show the testator had recent knowledge of or interaction with the testator's other children prior to executing the will.  In fact, it is unclear how many, if any, of Darrick's siblings were alive at the time the testator executed the will.  The burden was on Darrick to support his argument and to point this Court to where in the record his arguments are supported.  *See* Kentucky Rule of Appellate Procedure 32(A)(4).

The heirs cite *Williams v. Vollman*, 738 S.W.2d 849 (Ky. App. 1987), a factually dissimilar case, but helpful, nonetheless.  In *Williams*, the testator bequeathed assets to his wife and daughter, both of whom were deceased at the

-10-

time he executed the will. *Id.* at 850. This Court found that even though the testator did not know the natural objects of his bounty at the time he executed the will, he had adequate testamentary capacity because, in part, the testator's family explicitly withheld knowledge of the wife's and daughter's deaths from the testator on the presumption that such knowledge "might weaken his resolve to live." *Id.* The *Williams* Court found testamentary capacity because, while testator did not have *actual* knowledge of the objects of his bounty, he had "sufficient mind to know" his bounty. *Id.* at 850-51. The Court found the testator's "mental faculties were intact" and "[t]here is no doubt that the testator would have understood that his wife and daughter were dead had the family seen fit to inform him." *Id.* at 851. Although factually distinct, *Williams* demonstrates that the court must review all surrounding evidence, not just the four corners of the will itself. Unfortunately for Darrick, he relied on the four corners of the document alone and did not sufficiently support his capacity argument. It is not enough for Darrick to assert that his father might have had subtle signs of dementia around 2019 and a peculiar error in the will itself when the attorney preparing it swore to the testator's capacity. To succeed, he needed to present conclusive evidence – beyond his own opinions and an unexplained error – showing the testator lacked the *minimal level* of mental capacity *at the time* the testator executed the will. *See Getty*, 581 S.W.3d at 554-55 (citation omitted) ("The burden is placed upon those who seek to

overturn the will to demonstrate the lack of capacity. The presumption created is a rebuttable one, so that evidence which demonstrates conclusively that the testator lacked testamentary capacity at the time of the execution of the will results in nullifying the will.").

Next, Darrick argues the heirs exerted undue influence upon his father and that influence resulted in the unnatural distribution.[6] Again, Darrick bears the burden and must demonstrate undue influence "with evidence of substance." *See Fischer v. Heckerman*, 772 S.W.2d 642, 645 (Ky. App. 1989). More specifically, to succeed on this claim, Darrick needed to show prior to or during the execution of the will, "the testator was so inappropriately influenced that [he] no longer possessed the free will to dispose of [his] property in accordance with [his] own judgment." *Rothwell*, 257 S.W.3d at 124-25. This influence must be of such a degree that "the testator's free agency is destroyed." *Fischer*, 772 S.W.2d at 645 (citation omitted). Further, this proof must go beyond mere opportunity. *Nunn v. Williams*, 254 S.W.2d 698, 700 (Ky. 1953). To determine whether a will reflects the wishes of the testator, the court must examine the "badges" of undue influence.

> [These badges of undue influence] include a physically
> weak and mentally impaired testator, a will unnatural in its
> provisions, a lately developed and comparatively short

---

[6] Darrick argues the heirs exerted undue influence in the year prior to the testator's death, but those accusations are not relevant to this appeal. "Undue influence exercised after the execution of the will has no bearing whatsoever upon whether the testator disposed of her property according to her own wishes." *Getty*, 581 S.W.3d at 555.

> period of close relationship between the testator and the principal beneficiary, participation by the beneficiary in the physical preparation of the will, the possession of the will by the beneficiary after it was written, efforts by the beneficiary to restrict contacts between the testator and the natural objects of his bounty and absolute control of testator's business affairs by a beneficiary.

*Fischer*, 772 S.W.2d at 645 (citations omitted).

Here, Susan had been the testator's paramour for approximately 15 years. The testator and Susan lived together, but there is no evidence she or her son, Billy, participated in the preparation of the will or had absolute control of the testator's business affairs. Darrick argued – *but did not establish with corroborating evidence* – that his father was physically weak and mentally impaired at the time he executed the will and that the heirs restricted contact between the testator and his children.

Ultimately, Darrick established at best only one of the badges of undue influence – that the will was unnatural in its provisions. In *Getty*, we held that if the contestant can offer evidence of activities such as participation in the will preparation or complete control over the testator's finances, then the burden of persuasion might shift to the proponents of the will. *Getty*, 581 S.W.3d 554. The burden of proof remains on the contestant. *Id.* Darrick did not offer any such evidence, and the attorney's affidavit refuted the unverified claims. However, even in those situations, "the evidence presented must not merely be a scintilla. It

must be of sufficient character, substance, and weight to furnish a firm foundation for a jury's verdict." *Fischer*, 772 S.W.2d at 646 (citing *Sloan v. Sloan*, 197 S.W.2d 77, 80-81 (Ky. 1946)). "[A] will [may] not be disturbed based on remote or speculative evidence." *Getty*, 581 S.W.3d at 554.

Here, Darrick asserted both undue influence and the lack of testamentary capacity, but did not meet his burden of proof. His evidence was not of sufficient character, substance, or weight to furnish any foundation, firm or otherwise, for a jury's verdict. Thus, the heirs are entitled to a judgment as a matter of law, and the circuit court did not error in granting the heirs' motion for summary judgment.

## IV.  CONCLUSION

Therefore, the order of the Jefferson Circuit Court is AFFIRMED.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEES: |
|---|---|
| Darrick Lee Austin, *pro se* | Armand I. Judah |
| Leitchfield, Kentucky | Louisville, Kentucky |